UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| DONALD HARMAN,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF SANTA CRUZ, CALIFORNIA, et al.,<br><br>　　　　　Defendants. | Case No. 5:16-cv-04361-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Re: Dkt. Nos. 10, 10-23 |

Plaintiff Donald Harman brings this civil rights action under 42 U.S.C. § 1983 against the City of Santa Cruz, as well as Police Chief Kevin Vogel, Lieutenant Warren Barry, Sergeant Carter Jones, and Officer Ian Burnham (collectively, "Defendants"), alleging that certain provisions of the Santa Cruz Municipal Code ("SCMC") are unconstitutional restrictions on protected speech. Specifically, Plaintiff challenges the constitutionality of the City's noise ordinance, SCMC section 9.36.020, as well as Chapter 9.40 *et seq.*, which governs the use and approval of sound amplification permits. Compl. ¶ 1, Dkt. No. 1. Harman challenges the constitutionality of these two ordinances on their face and as applied to his speech, and seeks declaratory and injunctive relief, as well as nominal damages. Compl. ¶ 3.

The court has jurisdiction over the federal claims at issue pursuant to 28 U.S.C. §§ 1331 and 1343 and supplemental jurisdiction over the California State Constitution claims under 28 U.S.C. §§ 1367. Presently before the court is Harman's Motion for a Preliminary Injunction requesting that the court "enjoin[] Defendants…from applying Ordinances 9.36.020 and 9.40.010 *et seq.* so as to restrict constitutionally-protected speech of speakers, including Harman and other third parties, on the city sidewalks alongside Pacific Avenue." Compl. ¶ D; Dkt. Nos. 10 and Dkt.

No. 10-23.[1]  Having carefully reviewed the papers submitted by both parties in this matter, the Motion for a Preliminary Injunction will be GRANTED IN PART and DENIED IN PART for the reasons explained below.

## I.    BACKGROUND

Donald Harman is a self-described born-again evangelical Christian who seeks to "share the message of God's salvation, which he refers to as the 'gospel,' with as many people as possible."  Compl. ¶¶ 18-19.  In order to share this message, Harman typically goes to public sidewalks and "preaches" – that is, he "orally and publically proclaims his religious beliefs."  Compl. ¶¶ 20-21; see also Aff. of Donald Harman ("Harman Aff.") ¶¶ 2-3 Dkt. No. 10-1.

Harman has preached regularly in downtown Santa Cruz since 2013, primarily on the sidewalks along Pacific Avenue at the intersections of Pacific Avenue and Cooper Street, and Pacific Avenue and Soquel Avenue.  Harman Aff. ¶¶ 12-13.  The Pacific Avenue sidewalks are characteristically busy with a variety of street performers, including musicians, dancers, activists, poets, clowns, magicians, jugglers, and acrobats, among others, which often results in a lively, loud, and even chaotic environment that has come to be considered  part of "the Santa Cruz culture" and something of "a staple of the downtown experience."  Compl. ¶¶ 33-39.  Harman acknowledges that some might not appreciate his message, but states that he does not try to offend, insult, or harass anyone, does not encourage violence, and does not solicit funds or membership in any organization.  Compl. ¶¶ 25-27.  Because he "prefers to speak in conversational tone in lieu of speaking with a raised voice," Harman favors the use of a personal amplification device when he preaches.  Compl. ¶ 22.

For approximately one year, Harman shared his religious message in downtown Santa Cruz through an amplifier without incident or interference.  Compl. ¶ 41; Harman Aff. ¶ 14. While he did encounter the occasional passersby who voiced disagreement with his message or

---

[1] Harman has filed a Notice of Motion and Motion for Preliminary Injunction (Dkt. No. 10), as well as a Memorandum of Points and Authorities in Support of the Motion for Preliminary Injunction (Dkt. No. 10-23).  Unless otherwise noted, all citations to the Motion are in reference to the Memorandum of Points and Authorities (hereafter, "MPI.").

Case No.: 5:16-cv-04361-EJD
ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

heckled him, these exchanges never involved physical alterations.  Id.  However, in March of 2014, a police officer approached Harman and informed him that he needed to acquire a permit from the Santa Cruz Police Department in order to use the amplifier in public.  Compl. ¶ 43.  Although Harman "believed he had a right to speak on a public sidewalk with reasonable amplification without having to obtain a permit in advance," he states that did not want to cause trouble or risk arrest, so he left.  Compl. ¶ 42; Harman Aff. ¶ 15.

### A.    Santa Cruz Sound Amplification and Noise Restriction Ordinances

Santa Cruz Municipal Code Chapter 9.40, entitled Sound Amplifiers (the "Amplifier Ordinance"), mandates that all persons who wish to use any sound-amplifying device or equipment on public or private property must first secure a permit from the police department.  See § 9.40.010.[2]  Among other requirements, the application for the sound amplification permit calls for the applicant to "describe in detail the activity proposed to be conducted for which [the permit] is requested," and "set forth the steps that the applicant will take to ensure that the sound amplification will not unreasonably disturb other people within the vicinity."  § 9.40.020.  The Amplifier Ordinance vests the police chief with the power to grant or deny the permit, stating:

> The police chief may grant the sound amplification permit if he determines that the sound amplification will be conducted in such a manner as not to unreasonably disturb the neighbors or other persons in the vicinity of the sound amplification, and if he further determines that if actually implemented, the steps to be taken by the applicant to minimize or avoid such disturbance will be adequate. In granting a permit, the police chief may impose such conditions as may be appropriate or necessary in order to protect the public peace and safety.

§ 9.40.030.  The Ordinance also includes a renovation provision, which further provides, "Any permit granted pursuant to this section shall be revocable at any time by the police chief for good cause."  § 9.40.040.   An unfavorable decision by the police chief regarding a sound amplification permit may be appealed by the aggrieved party to the city council.  § 9.40.050.

On April 12, 2014, Harman submitted an application for a sound amplification permit in

---

[2] A copy of Chapter 9.40 is also attached as Exhibit D to Harman's Motion for Preliminary Injunction (Dkt. No. 10-4).

accordance with this process, which Santa Cruz Police Lieutenant Warren Barry granted on May 1, 2014.[3] Compl. ¶ 43; Barry Decl. ¶¶ 11-12 and Ex. A (Approved Sound Amplification Permit Appl.), Dkt. No. 27-1. The permit's "Event Conditions" state that "complaints of loud noise may result in revocation of permit," and that applicant must "obey all local, state, and federal laws." See Barry Decl., Ex. A at 2. The permit includes the date the application was submitted and the date it was approved, however, the permit does not indicate any expiration date. See id. at 1-2; Compl. ¶ 44.

The permit also expressly requires compliance with Santa Cruz Municipal Code Chapter 9.36, entitled Noise (the "Noise Ordinance"). See § 9.36.010 et seq.[4] Section 9.36.020 of the Noise Ordinance provides:

> No person shall make, suffer or permit to be made any noises or sounds which are unreasonably disturbing or physically annoying to people of ordinary sensitiveness or which are so harsh or so prolonged or unnatural or unusual in their use, time or place as to cause physical discomfort to any person.

This language is also provided on the permit application itself, though the application quotes an outdated version of the Ordinance that was previously invalidated by this court in Hampsmire v. City of Santa Cruz, 899 F. Supp. 2d 922, 938-939 (N.D. Cal. 2012). See Barry Decl., Ex. A at 1. In Hampsmire, the court found section 9.36.020's provision banning noise "which is not necessary in connection with any activity which is otherwise lawfully conducted" to be unconstitutionally vague. Id. Following the Hampsmire ruling in 2012, the Santa Cruz City Council revised the Ordinance to remove this clause, leaving only the above referenced language. Declaration of Barbara H. Choi ("Choi Decl."), Dkt. No. 24.

---

[3] While the Amplifier Ordinance provides that it is the police chief who has the authority to grant or deny an amplification permit, according to Defendants, Police Chief Kevin Vogel "designated" his authority for granting permits to Lt. Barry. Decl. of Lt. Warren Barry ("Barry Decl.") ¶ 7, Dkt. No. 27.

[4] A copy of Chapter 9.36 is also attached as Exhibit O to Harman's Motion for Preliminary Injunction (Dkt. No. 10-10).

Case No.: 5:16-cv-04361-EJD
ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

**B.    Harman is Confronted by Santa Cruz Police Officers Regarding Alleged Violations of the City's Noise Ordinance**

After Harman received his permit, he returned to preaching on Pacific Avenue with the use of a personal amplification device, and did so without incident for approximately another year. See Compl. ¶¶ 43-46. However, on Saturday, May 16, 2015, Harman alleges that he was approached by Lt. Barry, who informed him that he had "received anonymous complaints about Harman's expression," and asked him if he could lower the volume of his amplifier. Id. ¶ 46. Harman contends that he was not being unreasonably loud – that he "was not nearly as loud as performers who regularly played in those same areas" – and therefore any complaints about him must have been based on the content of his message rather than its volume. Harman Aff. ¶ 17. However, he states that he "did not want to cause any problems and willingly agreed to do so." Compl. ¶ 46. Harman further asserts that although he was consciously trying to maintain an appropriate and acceptable volume following this encounter with Lt. Barry, he "was not given any guidance on how low the amplifier needed to be or at what decibel level his speech needed to be" in order to be reasonable. Id. ¶ 47; Harman Aff. ¶ 17.

A few months later, on July 24, 2015, Harman returned to Pacific Avenue and used his amplification device to preach at what he contends was a low volume. Compl. ¶ 52. Harman alleges that, notwithstanding his lowered volume, Lt. Barry abruptly revoked Harman's amplification permit without warning, citing Harman's failure to comply with the permit's terms. Compl. ¶¶ 52-54. Lt. Barry stated that Santa Cruz Police Department had received "beyond large [sic] amount of complaints" about Harman's preaching,[5] and then concluded "your permit is now, it's gone, it's expired, you don't have an amplification permit anymore." MPI, Ex. H. (audio recording of conversation between Harman and Lt. Barry on July 24, 2015), Dkt. No. 10-6. When Harman asked how Lt. Barry could arbitrarily just take away his permit, Lt. Barry stated, "It's over a year and I'm taking it away from you." MPI, Ex. H; Compl. ¶ 55. When Harman pointed

---

[5] According to Lt. Barry's written report of the July 24, 2015 encounter, between January and July of 2015, the Department had received "at least ten" complaints regarding both the noise level and the content of about Harman's preaching. Barry Decl. ¶¶ 13-14 and Ex. B, Dkt. Nos. 27, 27-1.

Case No.: 5:16-cv-04361-EJD
ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

out that the permit did not have an expiration date and asked whether Lt. Barry was doing this on his own authority, Lt. Barry responded: "I'm in charge of amplification permits, and you have been louder than normal, and so I'm just letting you know that you don't have amplification permit anymore." MPI, Ex. H; Compl. ¶¶ 56-57. Lt. Barry concluded the interaction by telling Harman, "You cannot use an amplification device" and again repeating that the permit was "expired." MPI, Ex. H; see also Compl. ¶¶ 57-58. Harman has not appealed the permit revocation or re-applied for a new permit. Opp. at 2.

Harman continued to preach and use his amplifier after his permit was revoked. Harman Aff. ¶ 24. On August 14, 2015, Harman was preaching through an amplifier in downtown Santa Cruz on Pacific Avenue and Cooper Street. Id. ¶¶ 28-29. Harman recorded video and audio footage of various interactions and events that occurred on August 14, 2014, and attached them as exhibits in support of his Motion. See MPI, Exs. E-N, P-II, KK-NN, Dkt. No 10. These exhibits show Harman speaking on August 14, 2015 in an amplified volume with people gathered around him. A number of people were disturbed by the content of his message and called him names, displayed offensive hand gestures, and attempted to drown out his speaking with other loud sounds such as music, drumming, and yelling. MPI, Exs. R-AA, Dkt. No. 10-11. One citizen yelled, "we do not want you here, Santa Cruz does not tolerate hate speech," and another chanted "you molest children." See MPI, Exs. CC, FF, Dkt. No. 10-13. Harman at times raised his voice to be heard over the hecklers, however, the exhibits also show that street performers and the yelling of other citizens was often louder than Harman's preaching. See e.g., MPI, Ex. Z, Dkt. No. 10-11; Ex. CC, Dkt. No. 10-13.

Around 6:00 p.m., Harman alleges that Lt. Barry and Officer Burruel approached him and told him to keep the noise down or he could be in violation of the municipal code, handing a copy of SCMC § 9.36.020. Harman Aff. ¶¶ 33-34; see MPI, Exs. N-M, Dkt. Nos. 10-8, 10-9. A few hours later, around 8:30, Sergeant Carter Jones arrived and asked for Harman's identification. Harman Aff. ¶¶ 58-65. Sgt. Jones informed Harman that two people had signed "citizen's citations" complaining about his "loud amplified speech." Id.; MPI, Exs. EE-GG; Declaration of

United States District Court
Northern District of California

Sergeant Carter Jones ("Jones Decl.") ¶ 8, Dkt. No. 26.  Sgt. Jones stated that based on these complaints, Harman was in violation of SCMA section 9.36.020, and issued two citations to this effect.  Jones Decl., ¶¶ 7-9; MPI, Exs. EE-GG.  Sgt. Jones told Harman he would not have issued the citation if it were not for the complaints of the two people, and also said he could hear Harman's preaching from about seventy-five feet away and found it to be objectively loud and in violation of the city's offensive noise code. Ex. GG; Jones Decl. ¶¶ 4-8.

After he received the citations, Harman alleges that he attempted to preach without an amplifier, but doing so results in his voice being easily drowned out by other sounds, or having to yell, which he contends detracts from his message. Harman Aff. ¶¶ 75-76.  On September 18, 2015, Defendants allege that a citizen reported a noise disturbance on Pacific Ave. and Soquel Ave. to Police Officer Ian Burnham. Decl. of Police Officer Ian Burnham ("Burnham Decl.") ¶ 7, Dkt. No. 25.  Burnham states that he witnessed Harman "yelling at a passerby" and issued Harman a citation. Id. at ¶ 8.  Harman contends the citation came without warning or request to lower his volume. Harman Aff.  ¶ 78.

Harman's legal counsel later sent a letter to the Santa Cruz mayor, city manager, city attorney, and chief of police complaining that the City's arbitrary enforcement of the Noise Ordinance infringed on Harman's First Amendment rights and unreasonably subjected him to $1,455 in fines. MPI, Ex. RR, Dkt. No. 10-21.  The City's written response stated Harman incorrectly stated facts and misinterpreted the law. MPI, Ex. SS, Dkt. No. 10-22.  Harman contends that he cannot continue preaching without risking citation and arrest, and thus initiated this lawsuit. Harman Aff. ¶¶ 85-86, Dkt. No. 10-1.

## II.     LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008).  "To obtain a preliminary injunction, the moving party 'must establish that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in

United States District Court
Northern District of California

the public interest.'" Idaho v. Coeur D'Alene Tribe, 794 F.3d 1039, 1046 (9th Cir. 2015) (quoting Pom Wonderful LLC v. Hubbard, 775 F.3d 1118, 1124 (9th Cir. 2014)).

Alternatively, "'serious questions going to the merits' and a hardship balance that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011). This articulation represents "one alternative on a continuum" under the "'sliding scale' approach to preliminary injunctions employed" by the Ninth Circuit. Id. at 1131-32. Whether to grant or deny a TRO or preliminary injunction is a matter within the court's discretion. See Miss Universe, Inc. v. Flesher, 605 F.2d 1130, 1132-33 (9th Cir. 1979).

## III. DISCUSSION

Harman requests that the court enter a preliminary injunction enjoining Defendants and their agents from enforcing and applying Santa Cruz Municipal Code sections 9.36.020 and 9.40.010 et seq. "so as to restrict constitutionally-protected speech of speakers, including Harman and other third parties." Compl. ¶ D; Dkt. Nos. 10 and Dkt. No. 10-23. Harman challenges the constitutionality of these Ordinances on the grounds that section 9.36.020 is both vague and overbroad, and Chapter 9.40 "establishes a prior restraint on the use of amplification with no objective criteria to guide the discretion of licensing officials." Dkt. No. 10, at 2. Harman challenges the constitutionality of these two Ordinances on their face and as applied to him. Because a preliminary injunction as to the facial claims would necessarily encompass the relief sought in Harman's as-applied claims, the court will begin with the facial challenges.

### A. Likelihood of Success on the Merits or Serious Questions Requiring Litigation

To satisfy the first element of the standard for injunctive relief, it is not necessary for the moving party to "prove his case in full," or show that he is "more likely than not" to prevail. Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981); Leiva–Perez v. Holder, 640 F.3d 962, 966 (9th Cir. 2011). Rather, the moving party must demonstrate a "fair chance of success on the merits" or raise questions "serious enough to require litigation." Benda v. Grand Lodge of the

8

Int'l Ass'n of Machinists & Aerospace Workers, 584 F.2d 308, 315 (9th Cir. 1978); see also Koller v. Brown, 224 F. Supp. 3d 871, *6 (N.D. Cal. 2016) (holding that where there were "equally plausible opposing views" concerning the constitutionality of a state code, even though the plaintiff had not demonstrated a likelihood of success on the merits, plaintiff had "certainly raised a question 'serious enough to require litigation,'" thus satisfying this element).

### i. Facial Challenge to Section 9.36.020

An ordinance may be facially unconstitutional in two ways. The first kind of facial challenge asserts that the ordinance "is unconstitutional in every conceivable application," and "could never be applied in a valid manner because it is unconstitutionally vague or it impermissibly restricts a protected activity." Foti v. City of Menlo Park, 146 F.3d 629, 635 (9th Cir. 1998), as amended on denial of reh'g (July 29, 1998) (quoting Members of City Council of City of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 796 (1984). The second type of facial challenge asserts that the ordinance is written so broadly that it includes constitutionally protected activities within its prohibitions, and is therefore unconstitutionally overbroad. Id.

Here, the Santa Cruz Noise Ordinance, section 9.36.020, reads in its entirety:

> No person shall make, suffer or permit to be made any noises or sounds which are unreasonably disturbing or physically annoying to people of ordinary sensitiveness or which are so harsh or so prolonged or unnatural or unusual in their use, time or place as to cause physical discomfort to any person.

See also, MPI, Ex. O. Harman asserts both "overbreadth" and "void for vagueness" challenges to this Ordinance. He argues that the first clause, prohibiting "any noises or sounds which are unreasonably disturbing or physically annoying to people of ordinary sensitiveness," lacks objective criteria for assessing whether a violation occurred, including any reference to volume or decibel level, and is therefore unconstitutionally overbroad. As to the second clause, Harman argues that a prohibition on "harsh," "prolonged," "unnatural" or "unusual" noises that cause *any person* to experience "physical discomfort" is vague and necessarily depends on the subjective opinions and sensitivities of the complaining person. Because the two clauses are written in the disjunctive, the validity of one clause is not tethered to the validity of the other, so the court must

9

evaluate each clause independently.  See United States v. Jackson, 390 U.S. 570, 585 (1968) ("[T]he unconstitutionality of a part of an Act does not necessarily defeat ... the validity of its remaining provisions.").

The Supreme Court and the Ninth Circuit have repeatedly reaffirmed that public places such as sidewalks are "the archetype of a traditional public forum." Gaudiya Vaishnava Soc. v. City & Cty. of San Francisco, 952 F.2d 1059, 1065 (9th Cir. 1990), as amended on denial of reh'g (Dec. 26, 1991) (quoting Frisby v. Schulz, 487 U.S. 474 (1988)).  In such traditional public fora, the government's authority to restrict speech is at its minimum.  Id.  A state may impose content-neutral regulations limiting "'the time, place, and manner of expression' if the regulations are 'narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.'" Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 940 (9th Cir. 2011) (quoting Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45 (1983).  To be narrowly tailored, a time, place, or manner regulation of speech "need not be the least restrictive or least intrusive means;" rather, the requirement is satisfied "so long as the ... regulation promotes a substantial government interest that would be achieved less effectively absent the regulation."  Ward v. Rock Against Racism, 491 U.S. 781, 798-99 (1989); see also Comite de Jornaleros, 657 F.3d at 947 (clarifying that for a regulation to be narrowly tailored, it "must focus on the source of the evils the city seeks to eliminate ... and eliminate them without at the same time banning or significantly restricting a substantial quantity of speech that does not create the same evils.") (internal quotations omitted).

There is no dispute that the Noise Ordinance is content-neutral on its face. Additionally, it is well-settled that protecting residents from excessive noise is considered a substantial government interest.  See Ward, 491 U.S. at 796 ("[I]t can no longer be doubted that government 'ha[s] a substantial interest in protecting its citizens from unwelcome noise.'").

### a. Whether the Prohibition on "Unreasonably Disturbing" or "Physically Annoying" Sounds is Unconstitutionally Overbroad

Whether a particular law is unconstitutionally overbroad turns on "whether the ordinance

Case No.: 5:16-cv-04361-EJD
ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

sweeps within its prohibitions what may not be punished under the First and Fourteenth Amendments." Grayned v. City of Rockford, 408 U.S. 104, 114-15 (1972). In a facial challenge brought on First Amendment grounds, a local ordinance "may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." Comite de Jornaleros, 657 F.3d at 944 (quoting United States v. Stevens, 559 U.S. 460 (2010) and Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 449 n. 6 (2008)); see also S.O.C., Inc. v. Cty. of Clark, 152 F.3d 1136, 1142 (9th Cir.), amended, 160 F.3d 541 (9th Cir. 1998) (holding that a "overbreadth" challenge to an ordinance must show that the ordinance "seeks to prohibit such a broad range of protected conduct that it is unconstitutionally overbroad."). "The overbreadth doctrine exists 'out of concern that the threat of enforcement of an overbroad law may deter or chill constitutionally protected speech.'" Comite de Jornaleros, 657 F.3d at 944 (quoting Virginia v. Hicks, 539 U.S. 113, 119 (2003)).

Here, Harman's overbreadth argument primarily challenges the Noise Ordinance's prohibition on "physically annoying" sounds. See MPI at 12-14; Reply at 13-14. Harman takes particular issue with this provision in light of the fact that it lacks any reference to volume, as thus essentially outlaws speech – regardless of noise level – if a person of ordinary sensitivity would be "unreasonably disturb[ed]" or "physically annoy[ed]" by the speech's expression of an idea they find offensive. Id. With respect to the term "physically annoying," the court agrees.

The prevention of "annoyance" is not a proper basis on which to curtail protected speech. As the Supreme Court held in Coates v. City of Cincinnati, a state may not make laws suppressing fundamental First Amendment rights "simply because its exercise may be 'annoying' to some people." 402 U.S. 611, 615–16 (1971). In a strong rebuke of any suggestion to the contrary, the Court further elaborated:

> If this were not the rule, the right of the people to gather in public places for social or political purposes would be continually subject to summary suspension through the good-faith enforcement of a prohibition against annoying conduct. And such a prohibition, in addition, contains an obvious invitation to discriminatory enforcement against those whose association together is 'annoying' because their ideas, their lifestyle, or their physical appearance is resented by the majority of their fellow citizens.

11

Id.; see also Bell v. Keating, 697 F.3d 445, 460–61 (7th Cir. 2012) ("silencing otherwise protected speech because it annoys is tantamount to 'suspending unconditionally the right of assembly and free speech.'") (quoting Coates, 402 U.S. 616). "[A] function of free speech under our system of government is to invite dispute" – especially when the content of the speech is unpopular or could be deemed offensive. Terminiello v. City of Chicago, 337 U.S. 1, 4 (1949). But it is a fundamental tenant of American democracy that the right to free speech outweighs the right to be free from annoyance. Id. As the Supreme Court explained,

> Speech is often provocative and challenging. It may strike at prejudices and preconceptions and have profound unsettling effects as it presses for acceptance of an idea. That is why freedom of speech, though not absolute, is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest.

Id. Indeed, "mere public intolerance or animosity cannot be the basis for abridgment of [] constitutional freedoms." Coates v. City of Cincinnati, 402 U.S. at 615

Defendants do not meaningfully address Harman's specific overbreadth challenge to the term "physically annoying." Rather, Defendants argue generally that the Noise Ordinance is distinguishable because it is tied to the objective standard of a person with "ordinary sensitivities," whereas the law in cases such as Coates included no such limitation. See Opp. at 6-7. However, the critical issue here is not necessarily who is suffering the annoyance, but rather what the source of the annoyance is. In other words, an objectively "reasonable person" of "ordinary sensitivities" may find certain speech annoying, but if the basis for their annoyance is distain or offense to its content, a law that permits curtailing speech on the basis of that annoyance is invalid. Such is the case here. Without being tethered to volume or other more specific prerequisites for enforcement, the Noise Ordinance's use of the term "physically annoying" impermissibly "sweeps within its prohibitions" speech that one finds annoying based on its *content* rather than its sound. And while Defendants contend that they do not enforce the Ordinance on this basis, this is of little relevance where, as here, the plain language of the Ordinance would nevertheless allow for such enforcement. See Comite de Jornaleros, 657 F.3d at 946–47 ("We cannot simply presume the

Case No.: 5:16-cv-04361-EJD
ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

City will act in good faith and adhere to standards absent from the ordinance's face.")

The court therefore agrees with Harman that the Noise Ordinance's prohibition on noise that is "physically annoying" fails to pass constitutional muster. However, the court disagrees that the prohibition on "unreasonably disturbing" noise is invalid under the same logic. As this court briefly suggested in Hampsmire v. City of Santa Cruz, prohibiting noise or sound that is "unreasonably disturbing" to a person of "ordinary sensitivities" establishes identifiable criteria that can be measured and assessed pursuant to an objective standard. See 899 F. Supp. 2d at 938. Courts have upheld similar statutory language prohibiting "unreasonable" and "disturbing" noise as a permissible restriction under the First Amendment. See Kovacs v. Cooper, 336 U.S. 77, 83 (1949) (finding that "disturbing noises" are "nuisances well within the municipality's power to control").

Defendants argue that this court's reasoning in Hampsmire should be construed as having found the entire first clause of section 9.36.020, including the term "physically annoying," to be constitutional. However, a close reading of the court's decision does not merit such an interpretation. The prior version of the Noise Ordinance challenged in Hampsmire was written in the conjunctive, requiring the court the address the clauses as read together. The court's decision to invalidate the Ordinance was based on the "necessary" exemption. While the court suggested that a prohibition on "unreasonably disturbing" noise would provide an objective standard if it were not "so interwoven" with the second "necessary" clause, the court never addressed the Ordinance's use of the term "physically annoying" at all. See Hampsmire, 899 F. Supp. 2d at 938-39. Instead, the court concluded that Section 9.36.020 was invalid in its entirety. Id. at 939. Here, because the first clause is written in the disjunctive – i.e. proscribing sounds "which are unreasonably disturbing *or* physically annoying to people of ordinary sensitiveness" – it is appropriate to assess the constitutionality of these terms independently. See Jackson, 390 U.S. at 585; see also Jim Crockett Promotion, Inc. v. City of Charlotte, 706 F.2d 486, 488-89 (4th Cir. 1983) (striking prohibition on "unnecessary" noise but not "unreasonable" noise where the terms were disjunctive).

13

Based on the foregoing, the court finds that Harman has established a likelihood of success on the merits of his constitutional challenge to the Ordinance's use of the term "physically annoying" in section 9.36.020, or – at a minimum – has demonstrated that there is a serious question as to its constitutionality that warrants further litigation. See Koller, 224 F. Supp. 3d at *6 (finding plaintiff had raised a question "serious enough to require litigation," where he had established "equally plausible opposing views" concerning the constitutionality of a state code). However, to the extent Harman challenges the constitutionality of the Ordinance's prohibition on sound that is "unreasonably disturbing to people of ordinary sensitivities," Harman has not established a likelihood of success on the merits of this claim and an injunction sought on this basis will be denied.

**b. Whether the Prohibition on "Harsh," "Prolonged," "Unnatural," or "Unusual" Sounds That Cause "Physical Discomfort to Any Person" is Unconstitutionally Vague**

Harman also alleges the second clause of section 9.36.020, which prohibits any noises or sounds that "are so harsh or so prolonged or unnatural or unusual in their use, time or place as to cause physical discomfort to any person," is unconstitutionally vague in violation of the Due Process Clause. MPI at 14.

It is a fundamental principle of due process that an enactment must "clearly delineate the conduct it proscribes." Kev, Inc. v. Kitsap County, 793 F.2d 1053, 1057 (9th Cir. 1986); Grayned v. City of Rockford, 408 U.S. 104, 108 (1972). A statute must be sufficiently clear so as to allow persons of "ordinary intelligence a reasonable opportunity to know what is prohibited." Foti, 146 F.3d at 638. An enactment that fails to meet this standard is void for vagueness. Grayned, 408 U.S. at 108. Vague laws offend the principle of due process because "they may entrap the innocent by not giving fair warning of what conduct is prohibited," and can result in arbitrary and discriminatory enforcement. Id. at 108-109; Kitsap Cty., 793 .2d at 1057. The Supreme Court has noted that vague laws concerning matters of First Amendment freedoms are additionally concerning because the lack of clarity in the law "operates to inhibit the exercise of (those) freedoms." Grayned, 408 U.S. at 108-109.

Case No.: 5:16-cv-04361-EJD
ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Harman alleges that the Noise Ordinance's prohibition on sounds that cause "any person" to complain of "physical discomfort" is highly subjective and fails to create a discernable standard that would inform a person of ordinary intelligence what is prohibited. See MPI at 14. Harman again takes issue with the fact that the Ordinance not only lacks any objective measurements, such as decibel level, but omits any reference for volume or noise level at all. Id. at 14-15. Harman contends that words harsh, prolonged, unnatural, or unusual have no clearly understood meaning, especially where such words are not linked to volume or qualified by the "reasonable person" standard. Id.

Defendants again fail to address the specifics of Harman's void for vagueness challenge to the second clause of the Ordinance, instead conflating a discussion of both clauses into one and asserting general conclusions that the language used in the Ordinance has "commonly understood meanings," and provides "objective guidance" and "fair warning of the prohibited conduct." Opp. at 6-7. Any elaboration from Defendants appears to rely on the fact that officers had previously warned Harman about his conduct and provided him with a copy of the ordinance to argue that notice was sufficient. See Opp. at 7-8. To the extent the officers' prior interactions with Harman provided notice of the kind of sound prohibited by the Ordinance, this argument would only be relevant in response to Harman's as-applied challenge. In other words, whether Harman himself was given notice of what the Ordinance proscribed is distinct from the question of whether the language of the Ordinance adequately provides such notice to all persons. Only the latter inquiry is material for the purposes of Harman's facial challenge.

The court agrees with Harman that the second clause of the Ordinance as currently written is vague and subjective. Determining whether a "harsh" or "unusual" noise has or will cause *any person* physical discomfort is entirely a matter of personal perceptions and lacks virtually any objective standard. An "individual of ordinary intelligence" cannot know whether their expression would be prohibited by the Ordinance because the answer turns on the unique sensitivities of any given person witnessing the noise. For example, one person may find the sound of writing on a chalkboard so "harsh" that he physically cringes, while another person may get physically sick to

her stomach at the sound of an "unusual" noise because she associates it with a troubling personal experience, even though the same noise would not upset "people of ordinary sensitivities." The ambiguity inherent in this language fails to provide adequate notice of the kind of noise prohibited by the Ordinance, and opens the Ordinance up to subjective and arbitrary enforcement by government officials. See Grayned, 408 U.S. at 108–09; Foti, 146 F.3d at 639. Accordingly, the court concludes that, at a minimum, Harman has demonstrated that there is a serious question requiring further litigation as to whether the second clause of section 9.36.020 is void for vagueness.

### ii. Facial Challenge to 9.40.010 *et seq.*

Harman's third facial challenge asserts that Chapter 9.40 of the SCMC, governing amplification permits, is an unconstitutional prior restraint because it gives unfettered discretion to licensing officials. MPI at 16-19. In relevant part, Harman challenges two sections of the Amplification Ordinance. Section 9.40.030, addressing the granting or denial of a permit, provides:

> The police chief may grant the sound amplification permit if he determines that the sound amplification will be conducted in such a manner as not to unreasonably disturb the neighbors or other persons in the vicinity of the sound amplification, and if he further determines that if actually implemented, the steps to be taken by the applicant to minimize or avoid such disturbance will be adequate. In granting a permit, the police chief may impose such conditions as may be appropriate or necessary in order to protect the public peace and safety.

And section 9.40.040, addressing the revocation of a permit, provides:

> Any permit granted pursuant to this section shall be revocable at any time by the police chief for good cause.

Harman asserts that Chapter 9.40 contains no meaningful standard to guide officials in granting, denying, and/or revoking amplification permits, and thus affords officials total discretion to regulate expression based on content under the guise of "public peace and safety." Id.

There is a heavy presumption against the validity of a prior restraint. Forsyth Cnty. v. Nationalist Movement, 505 U.S. 123, 130 (quoting Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 70 (1963)). As discussed, the government may impose some restrictions on the time place and

United States District Court
Northern District of California

manner of First Amendment expression in public forums only if the restrictions are (1) content-neutral, (2) narrowly tailored to a significant government interest, and (3) provide an alternate channel of communication. <u>Gaudiya</u>, 952 F.2d at 1065. "As an application of the requirement that restrictions be narrowly tailored, a law cannot condition the free exercise of First Amendment rights on the 'unbridled discretion' of government officials." <u>Id.</u> (citing <u>City of Lakewood v. Plain Dealer Publishing Co.</u>, 486 U.S. 750, 755 (1988)). Indeed, "[w]hen an approval process lacks procedural safeguards or is completely discretionary, there is a danger that protected speech will be suppressed impermissibly because of the government official's ... distaste for the content of the speech." <u>Young v. City of Simi Valley</u>, 216 F.3d 807, 819 (9th Cir. 2000); <u>see also</u> <u>Forsyth</u>, 505 U.S. at 130 (holding that the unchecked discretion of licensing process has the potential to suppress First Amendment freedoms).

Courts do not demand "perfect clarity and precise guidance" in a statute. <u>Ward</u>, 491 U.S. at 794. However, to prevent suppression of First Amendment freedoms, a law subjecting protected expression to prior restraint must contain "narrow, objective, and definite standards to guide the licensing authority." <u>Shuttlesworth v. Birmingham</u>, 394 U.S. 147, 151 (1969). Absent such standards, a licensing system will generally be invalided as an unconstitutional prior restraint. For example, in <u>Saia v. New York</u>, the Supreme Court found that an amplifier permitting system controlled by the chief of police was an unlawful prior restraint. 334 U.S. 587, 559-61 (1948). The Court explained that use of loud-speakers was an indispensable part of public speech, and did not look kindly on regulations that sought to control such speech through the pretext of controlling public "nuisance." <u>Id.</u> at 561. The court invalided the ordinance, finding that it restrained the right of free speech by delegating to the police chief the authority to allow or disallow the use of speakers without any prescribed standard for the exercise of this discretion, such as hours or decibel levels. <u>Saia</u>, 334 U.S. at 559–60, 68.

In <u>Gaudiya</u>, the Ninth Circuit upheld a permanent injunction issued by this court enjoining the enforcement of a city ordinance that regulated nonprofit groups' ability to sell merchandise on public sidewalks by requiring them to obtain a "peddler's permit" from the police department.

17

952 F.2d at 1065.  The Ninth Circuit agreed that the Ordinance's permitting provision was facially unconstitutional because it allowed for the denial or revocation of the permit at the discretion of a police chief.  Id.  The court took particular issue with the ordinance's permissive language, "the Chief of Police may issue a permit …," explaining that this language did not offer explicit limits for granting or denying the permits.  Id. at 1065-66 (emphasis in original).  Accordingly, the Ninth Circuit affirmed the district court's finding that "the city ordinance was unconstitutional on its face because it permitted the denial or revocation of a permit on the basis of discretionary judgment by the Chief of Police."  Id.

This court also granted a preliminary injunction on similar grounds in Citizens for Free Speech, LLC v. County of Alameda, finding that the plaintiff had established a likelihood of success on the merits of its claims that multiple provisions of an ordinance were unconstitutional because they afforded unfettered discretion to city officials.  62 F. Supp. 3d 1129, 1141 (N.D. Cal. 2014).  There, the court invalidated a provision allowing signs to be posted "*when approved by the director of the public works agency*," as well as a provision affording the Planning Commission discretion to grant or deny "conditional use permits" if, "in the planning commission's opinion, [the permit] would not 'materially change the provisions of the approved land use and development plan.'"  Id. (emphasis in original).

Here, the word "may" in the permitting provision is a permissive term that gives the police chief – or the police chief's designee – broad discretion to authorize the use of sound amplification "if he determines that the sound amplification will be conducted in such a manner as not to unreasonably disturb the neighbors or other persons in the vicinity of the sound amplification…" § 9.40.030.  Defendants argue that this language offers definite guidelines for the licensing official in that it requires the official to assess whether it will "unreasonably disturb" individuals in the area.  While the court agrees that this language provides some guidance as to when a permit must be *denied* – i.e. when the official determines that sound amplification *would* "unreasonably disturb" others – the language provides no requirement that a permit ever be *granted*.  Much like the peddling-permit requirement rejected by the Ninth Circuit in Gaudiya, the discretion to not

Case No.: 5:16-cv-04361-EJD
ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

grant a permit even where the other stated requirements are met vests the police chief with "complete power to allow or prohibit [the use of sound amplification] for any reason, including the message conveyed by the [speaker]." <u>Gaudiya</u>, 952 F.2d at 1062; <u>see</u> <u>City of Lakewood</u>, 486 U.S. at 772 (striking permit requirement on the grounds that it was unconstitutional to grant an official "unfettered discretion to *deny* a permit application.") (emphasis added). Because the use of sound amplification is protected expression, "the scheme grants power to the chief of police to discriminate based on the content of protected expression." <u>Gaudiya</u>, 952 F.2d at 1062; <u>see also</u> <u>N.A.A.C.P., Western Region v. City of Richmond</u>, 743 F.2d 1346, 1357 (9th Cir. 1984) (explaining that broad discretion "grants officials the power to discriminate and raises the spectre of selective enforcement on the basis of the content of speech.")

Perhaps even more troubling is the Ordinance's broad revocation provision, which provides that the amplification permit "shall be revocable at any time by the police chief for good cause." § 9.40.040. The Ordinance provides no additional guidance as to what constitutes "good cause," and offers no additional limitations on the police chief's power to revoke a permit.

Defendants contend that any perceived inadequacy in the Ordinance is remedied by the fact that, in practice, the City "interpreted and implemented the Municipal Code in a way that forbade the City from making a decision based on the message of the speaker," and that it has no intention of altering this practice. Opp. at 14; Barry Decl., ¶ 8, Dkt. No. 27. It is true that when evaluating a facial challenge to a state law, a federal court "must consider the [City]'s authoritative constructions of the ordinance, including its own implementation and interpretation of it." <u>Comite de Jornaleros</u>, 657 F.3d at 946–47 (quoting <u>Forsyth</u>, 505 U.S. at 131); <u>Ward</u>, 491 U.S. at 795. In doing so, courts consider whether "well-understood and uniformly applied practice has developed that has virtually the force of a judicial construction." <u>Lakewood</u>, 486 U.S. at 770 n. 11. However, courts are not required to insert missing terms into the statute or accept a limiting construction where plain language of the regulation is not "reasonably susceptible" to such a construction. <u>Id.</u> (citing <u>Foti</u>, 146 F.3d at 639; <u>Comite de Jornaleros</u>, 657 F.3d at 946 (rejecting government's proposed limiting construction; holding that an ordinance prohibiting solicitation

United States District Court
Northern District of California

cannot be reasonably interpreted to only apply to solicitors who cause motorists to stop).

Here, Defendants assert that police officers interpret the Ordinance to allow revocation of an amplification permit after the permit-holder exhibits "conduct that is contrary to the explicit conditions of the permit." Id. at 14-15; see Barry Decl. ¶ 8. However, the court agrees with Harman that that even if some officers interpreted the Ordinance in this manner, Defendants have not offered any basis on which the court could conclude that this interpretation was so widely understood and enforced as to amount to a "binding judicial or administrative construction, or well-established practice." Reply at 10 (quoting Lakewood, 486 U.S. at 770). In fact, the evidence in the record suggests the opposite. Exhibit H is an audio recording of the conversation between Harman and Lt. Barry on July 24, 2015, where Lt. Barry stated that he was taking away Harman's amplification permit. Dkt. No. 10-6. When Harman pressed Lt. Barry to explain the reason that he was revoking the permit, Lt. Barry provided a series of inconsistent and unclear responses, including that he had received complaints about Harman's preaching and that the permit was expired. See id.; Compl. ¶¶ 55-58. Despite Lt. Barry's multiple references during this conversation to the permit being expired, there does not appear to be any expiration date provided on the permit itself. See Barry Decl., Ex. A. Lt. Barry also made statements suggesting that it was simply within his discretion to revoke the permit, such as "It's over a year and I'm taking it away from you," and "I'm in charge of amplification permits, and you have been louder than normal, and so I'm just letting you know that you don't have amplification permit anymore." MPI, Ex. H; Compl. ¶¶ 55-57.

It is also worth noting that on July 24, 2015, when Lt. Barry revoked Harman's amplification permit, Harman had not yet been cited for any violation of the Noise Ordinance, nor was he given a citation during that interaction. Id. ¶¶ 52-58. Rather, it was not until approximately three weeks later on August 14, 2015 that Harman actually received citations for his alleged violations of the Noise Ordinance. See MPI Ex. JJ; Compl. ¶¶ 63, 140, 147. As a result, it is not at all clear on what basis Lt. Barry determined that Harman's conduct was "contrary to the explicit conditions of the permit" at the time he revoked it, thus further

United States District Court
Northern District of California

undermining the argument that the City understood and enforced this provision narrowly and consistently.  See Opp. at 14-15.  Neither the plain language of the revocation provision, nor the behavior of the Santa Cruz police officers evidenced in record demonstrate that the Ordinance is "reasonably susceptible" to the City's narrowing construction.  To the contrary, the interaction between Lt. Barry and Harman on July 24, 2015 indicates not only that the Ordinance affords extensive discretion to the officer in charge permits, but that this discretion has been used to revoke amplification permits for reason extending beyond any narrow construction of the Ordinance offered by the City.

While Defendants adamantly attest that they do not condition, grant, or revoke amplification permits based on content, such representations are insufficient where, as here, the language of the Ordinance itself does not preclude such an outcome.  As the Ninth Circuit explained in Comite de Jornaleros ,

> We cannot simply presume the City will act in good faith and adhere to standards absent from the ordinance's face. The First Amendment protects against the Government; it does not leave us at the mercy of *noblesse oblige*. We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly.

657 F.3d at 946–47 (citing City of Lakewood, 486 U.S. at 770) (internal quotations and citations omitted).  Based on the foregoing the court finds that Harman has demonstrated a likelihood of success on the merits of his facial challenge to Chapter 9.40.

**B.    Other Preliminary Injunction Factors**

"Even where a plaintiff has demonstrated a likelihood of success on the merits of a First Amendment claim, he 'must also demonstrate that he is likely to suffer irreparable injury in the absence of a preliminary injunction, and that the balance of equities and the public interest tip in his favor.'"  Thalheimer v. City of San Diego, 645 F.3d 1109, 1128 (9th Cir. 2011) (quoting Klein v. City of San Clemente, 584 F.3d 1196, 1207 (9th Cir. 2009)).

**i.    Irreparable Harm and Standing**

With respect to irreparable harm, Defendants' argue that Harman lacks standing to seek injunctive relief because he is not suffering irreparable harm.  In support of this position,

United States District Court
Northern District of California

Defendants cite cases for the proposition that speculation as to whether a plaintiff would be arrested again in the future fails to establish a likelihood of irreparable injury. See, e.g., City of Los Angeles v. Lyons, 461 U.S. 95, 101-102 (1983) (holding that a party seeking equitable relief in federal court "must show that he has sustained or is in immediate danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical."); Eggar v. Nutbrock, 40 F.3d 312, 317 (9th Cir. 1994) (holding that a "chain of speculative contingencies" regarding whether plaintiffs would be arrested again in the future fail to show the kind of "real and imminent threat" required for standing). Defendants' argument, as well as the cases upon which it is based, are unpersuasive and inapplicable to this case.

It is well established that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976); accord Thalheimer, 645 F.3d at 1128; S.O.C., 152 F.3d at 1148; Citizens for Free Speech, 62 F. Supp. 3d at 1142–43. There is no dispute that religious speech is considered a First Amendment freedom. See Capitol Square Review & Advisory Bd. V. Pinette, 515 U.S. 753, 760 (1995). "Under the law of this circuit, a party seeking preliminary injunctive relief in a First Amendment context can establish irreparable injury sufficient to merit the grant of relief by demonstrating the existence of a colorable First Amendment claim." Viacom Int'l, Inc. v. FCC, 828 F. Supp. 741, 744 (N.D. Cal. 1993).

Because the court found that Harman has established a likelihood of success or serious question on the merits of his First Amendment claims, it follows that he – or other third parties – are likely to suffer irreparable injury if a preliminary injunction is not issued. Thalheimer, 645 F.3d at 1128 (affirming district court's grant of partial injunction enjoining enforcement of campaign finance ordinance relying on "a long line of precedent" establishing that the denial of one's First Amendment rights conclusively constitutes an irreparable injury); Citizens for Free Speech, 62 F. Supp. 3d at 1143 ("Because infringement of First Amendment freedoms is an irreparable injury, Plaintiffs will be irreparably injured if the County is allowed to enforce the

Case No.: 5:16-cv-04361-EJD
ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Zoning Ordinance."); see also S.O.C., 152 F.3d at 1142 ("As a general rule, a litigant has standing only to vindicate his own constitutional rights. The Supreme Court, however, has recognized an exception to this general rule for laws that are written so broadly that they may inhibit the constitutionally protected speech of third parties."); Foti, 146 F.3d at 635 (same).

### ii. Public Interest and Balance of Equities

A plaintiff seeking injunctive relief must also demonstrate that the injunction is in the public interest. Winter, 555 U.S. at 20. The court must weigh the harm likely to be suffered by the City if the injunction is granted against the injury that will likely befall the plaintiff if it is not. The Ninth Circuit has consistently "recognized the significant public interest in upholding free speech principles, as the ongoing enforcement of the potentially unconstitutional regulations ... would infringe not only the free expression interests of [a plaintiff], but also the interests of other people subjected to the same restrictions." Klein, 584 F.3d at 1208. However, this interest is not absolute, and may give way to a "strong showing of other competing public interests." Id.

Here, while the court is cognizant of the government's legitimate interest in protecting its citizens from unreasonable and disruptive noise, this does not overcome the significant public interest in freedom of speech. See Ward, 491 U.S. at 791. Harman has demonstrated a likelihood of success on the merits of his constitutional challenges to the Noise and Amplification Ordinance on First Amendment grounds. Harman has further shown that he is likely to suffer irreparable harm from the suppression of his First Amendment rights if the at-issue provisions of the SCMC are not enjoined. Accordingly, the court finds that the City's interest in preserving the ordinances' limitations as currently written does not outweigh the public interest in upholding First Amendment principles. The City may still protect its interest in preventing excessive noise by revising the relevant provisions of the Noise and Amplification Ordinance.

Based on the foregoing, the court finds that Harman has sufficiently demonstrated that the balance of equities and public interest favor the requested injunction.

### C. As-Applied Challenge to 9.36.020 and 9.40.010 *et seq.*

In addition to Harman's facial challenges, the court acknowledges that Harman alleges that

sections 9.36.020 and 9.40.010 *et seq*. are also unconstitutional as applied to him, and sought a preliminary injunction on this basis as well. However, because the court finds that a preliminary injunction as to Harman's the facial challenges is justified, the court need not address Harman's as-applied claims, because any injunctive relief sought by such claims will be encompassed by the injunction issued on the basis of the facial challenges.

## IV. ORDER

Based on the foregoing, the court GRANTS IN PART and DENIES IN PART Harman's Motion for a Preliminary Injunction as follows:

(1) The City is preliminarily enjoined from enforcing the first clause of Santa Cruz Municipal Code Section 9.36.020 to the extent that such enforcement is based on the prohibition against noises or sounds that are "physically annoying." However, the court declines to enjoin section 9.36.020's prohibition on noises or sounds which are "unreasonably disturbing…to people of ordinary sensitivities."

(2) The City is preliminarily enjoined from enforcing the second clause of Santa Cruz Municipal Code Section 9.36.020, which prohibits any noises or sounds that "are so harsh or so prolonged or unnatural or unusual in their use, time or place as to cause physical discomfort to any person."

(3) The City is preliminarily enjoined enforcing Santa Cruz Municipal Code Section 9.40.010 *et seq.*, which requires a permit in order to use any sound-amplifying device or equipment and governs the process through which a permit may be granted, denied, or revoked.

(4) The preliminary injunction shall remain in effect until further order of the court.

(5) Because the City has not demonstrated a risk of monetary loss from the issuance of a preliminary injunction, no bond will be required.

**IT IS SO ORDERED.**

Dated: July 5, 2017

_____
EDWARD J. DAVILA
United States District Judge